DECISION AND JOURNAL ENTRY
Appellant, Jeffrey Turton, appeals a judgment of the Lorain County Court of Common Pleas rendered in favor of Appellee, York International. We affirm.
Appellee is a manufacturer of furnaces and air conditioning units. Its work force varies with the seasonal need for workers. New employees are considered at-will until they have been employed for 115 days, at which time they become union employees under a collective bargaining agreement. All at-will employees are given evaluations after thirty, sixty, and ninety days of employment. The evaluations grade ten areas on a scale of one (unsatisfactory) to five (outstanding).
During 1994 and again during early 1995, Appellant was an employee of Appellee, doing seasonal work at the Elyria plant. Both periods of Appellant's employment were terminated prior to reaching 115 days because of a lack of work for employees.
On June 28, 1995, Appellant was hired a third time by Appellee. It was understood that the term of employment was "for summer only" and would terminate in September 1995 or thereabouts.
On July 20, 1995, Appellant injured his neck while on the job at Appellee. He filed an application for workers' compensation benefits on August 2, 1995. Appellee contested the claim.
On July 27, 1995, Appellant received his first evaluation. Appellant received a score of three (expected) in four areas and a score of two (needs improvement) in six areas, including attendance. Among the comments on the evaluation was "has missed work in first 3 weeks." Four days later, Appellant was transferred to another division of Appellee's Elyria plant.
On August 19, 1995, Appellant told his supervisor, Oliver Holt, that he was leaving early to attend his son's birthday party. Holt told him to leave. The absence was noted in Appellee's personnel records.
Appellant received his second evaluation on August 25, 1995. He was given a score of three in all categories; no other comments appeared on the evaluation.
During his shift on September 5, 1995, Appellant left to attend the birth of his daughter. He informed Holt, who told him to go ahead and leave. This absence was also noted in the personnel records.
On September 21, 1995, Appellant missed work to attend a hearing on his workers' compensation claim. At trial, Appellant testified that he told Holt why he did not come to work; Holt testified that Appellant never told him the reason for not coming into work and that he (Holt) never found out or was told the reason.
In early October 1995, Holt spoke with his supervisor, Paul Thrasher. Holt showed Thrasher the third evaluation of Appellant, which gave him a score of one in all areas, and said that Appellant should be fired. Appellant's attendance was mentioned as one reason for Holt's recommendation. Thrasher looked at Appellant's personnel file and concluded that Appellant should be fired.
On October 7, 1995, Holt gave Appellant his evaluation and a notice of termination. The only reason noted on the notice of termination was "attendance problem."
Appellant filed a complaint in the Lorain County Court of Common Pleas on January 16, 1996, alleging that Appellee terminated him for pursuing his workers' compensation claim in violation of R.C. 4123.90. Appellee moved for summary judgment, and Appellant moved for partial summary judgment. The trial court granted Appellee's motion and denied Appellant's motion. Appellant appealed to this court. We affirmed the denial of Appellant's motion for partial summary judgment and reversed the granting of Appellee's motion for summary judgment. Turton v.York Internatl. (July 29, 1998), Lorain App. No. 97CA006790, unreported ("Turton I").
On remand, the matter was tried to the bench on July 21, 1999. Appellant, Thrasher, and Holt were the only witnesses. On July 27, 1999, the trial court granted judgment in favor of Appellee. Appellant moved for findings of fact and conclusions of law, and the trial court journalized its findings and conclusions on December 22, 1999. Appellant timely appealed to this court.
In his sole assignment of error, Appellant argues that the trial court's decision is against the manifest weight of the evidence. He asserts that the evidence supported a finding that Appellee illegally discriminated against him for pursuing his workers' compensation claim. We disagree.
This court has held that a judgment is against the manifest weight of the evidence only if the trier of fact clearly lost its way, creating a manifest miscarriage of justice that requires a reversal and a new trial. In re James (Oct. 14, 1998), Summit App. No. 18936, unreported, at 6. If the evidence before the trial court is subject to more than one interpretation, the reviewing court is bound to give it the interpretation that is most favorable to sustaining the trial court's judgment. Cent.Motors Corp. v. Pepper Pike (1995), 73 Ohio St.3d 581, 584. "This is because evaluating evidence and assessing credibility are primarily for the trier of fact." Estate of Barbieri v. Evans
(1998), 127 Ohio App.3d 207, 211.
R.C. 4123.90 states in pertinent part:
 No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.
 In order to prevail, the employee must first prove a prima facie case of discrimination under R.C. 4123.90. Green v. Burton Rubber Processing, Inc. (Dec. 11, 1998), Geauga App. No. 97-G-2102, unreported, 1998 Ohio App. LEXIS 5976, at *8. The employee must prove that (1) he sustained an injury on the job; (2) he filed a workers' compensation claim; and (3) his discharge was "in contravention of R.C. 4123.90." Id.; see, also, Wilson v. Riverside Hosp. (1985), 18 Ohio St.3d 8, syllabus.
The burden of production then shifts to the employer:
 If the employee makes a prima facie case, the burden shifts to the employer to set forth a nondiscriminatory reason for the discharge. * * * [T]he burden does not require the employer to prove the absence of a retaliatory discharge. It merely requires the employer to set forth a legitimate, nonretaliatory reason for the employee's discharge. The employer does not have to validate this reason.
 Finally, if the employer sets forth a legitimate, nonretaliatory reason, the burden once again shifts to the employee. The employee must then establish that the reason articulated by the employer is pretextual and that the real reason for the discharge was the employee's protected activity under the Ohio Workers' Compensation Act.
 (Citations omitted.) Kilbarger v. Anchor Hocking Glass Co.
(1997), 120 Ohio App.3d 332, 338. "While the burden of going forward with evidence may shift between the employee and the employer in these types of cases, the employee will always retain the ultimate burden of proof [or persuasion] in an action filed under R.C. 4123.90." Mayle v. Ravenna Aluminum
(Nov. 5, 1999), Portage App. No. 98-P-0103, unreported, 1999 Ohio App. LEXIS 5238, at *6.
In the case at bar, Appellee does not argue that Appellant failed to establish a prima facie case. Appellant does not contend that Appellee failed to set forth legitimate, nonretaliatory reasons for his discharge but instead argues that the reasons were pretextual and that the real reason for his discharge was his pursuit of a workers' compensation claim. Therefore, we will only address this third prong.
When considering whether a proffered reason is pretextual, most Ohio courts apply a "before and after" test, comparing the employee's situation before and after the filing of a workers' compensation claim. Fouts v. Seven-Up Bottling Co. of Cleveland
(Aug. 9, 1989), Lorain App. No. 88CA004448, unreported, at 5. "`Factors taken into consideration include such punitive action as bad performance reports surfacing immediately after a workers' compensation claim was filed, the length of time between the filing of a claim and discharge, changes in salary level, hostile attitudes emerging, and whether legitimate reasons exist for the discharge.'" Id., quoting Hohn v. Deco Tools, Inc. (Jan. 23, 1987), Lucas App. No. L-86-119, unreported, 1987 Ohio App. LEXIS 5613, at *9.
At trial, Thrasher testified that, with respect to non-union employees such as Appellant, Appellee had no stated policy for termination because of attendance, but that he had a "rule of thumb" that two absences could be cause for dismissal. Thrasher characterized the "rule of thumb" as a no-fault attendance policy.[1] Thrasher stated that when Holt came to him about Appellant, Holt said that Appellant's performance and attendance were poor and that Appellant should be fired. Thrasher then looked at Appellant's personnel file and concurred with Holt. According to Thrasher's testimony, workers' compensation records were kept separate from an employee's personnel file; he did not look at any record stating that Appellant had filed a workers' compensation claim or attended a hearing for such; and he (Thrasher) did not have any personal knowledge that Appellant filed a workers' compensation claim or was absent from work on September 21, 1995, to attend a workers' compensation hearing on his claim. Thrasher concluded that Appellant would have been fired even without an attendance problem.
Holt testified that he did not know that Appellant was pursuing a workers' compensation claim before preparing the second evaluation of Appellant, in which Appellant received a score of three in all ten categories. Holt further stated that Appellant did not tell him that he was attending a hearing on his claim on September 21, 1995, that he did not know of the reason, and that no one else told him of the reason before Appellant's third evaluation, with a score of one in all categories, was given on October 7, 1995.
Appellant testified that he told Holt the reason for all of his absences, including the workers' compensation hearing, and that Holt did not object to Appellant attending the hearing. He conceded that he assumed that he would be penalized for missing work for his son's birthday party and his daughter's birth and that he could be fired or otherwise disciplined for missing work twice. Appellant said that he did not know of any specific facts to show that he was fired for filing his workers' compensation claim or attending the hearing in connection with the claim.
We conclude that the trial court's judgment is not against the manifest weight of the evidence. There is evidence that Appellant was fired for poor performance and an overall attendance problem. Even if not all the reasons for Appellant's dismissal were listed on the notice of termination, they were legitimate, nonretaliatory reasons. There was also evidence that the reasons were not pretextual. After Appellant initially filed his claim, his evaluation scores actually improved. As we noted in the previous appeal, "[a]s long as an absenteeism policy is neutral on its face and in its application, punitive action taken for absenteeism is not, by itself, proof of a violation of" R.C.4123.90. Turton I, supra, at 7-8, citing Metheney v. SajarPlastics, Inc. (1990), 69 Ohio St.3d 428, 431-32; see, also,Russell v. Franklin Cty. Auditor (Sept. 28, 1999), Franklin App. No. 98AP-1502, unreported, 1999 Ohio App. LEXIS 4497, at *7 ("A discharge based on excessive absenteeism is not violative of R.C.4123.90 absent some credible evidence that such termination was retaliatory in nature."). As the finder of fact, the trial court was entitled to believe the testimony of Thrasher and Holt and to find, as a result, that the reasons proffered by Appellee were not pretextual.[2]
The trial court's judgment is not against the manifest weight of the evidence. Accordingly, Appellant's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
[1] A separate no-fault attendance policy exists for employees who are members of the union. Because Appellant had not worked at York long enough to qualify for union membership, the policy is not relevant here.
[2] To the extent that Appellant has argued that Appellee's no-fault absenteeism policy for non-union employees is a per se
violation of R.C. 4123.90, we find those arguments without merit, as they were addressed by this court in Turton I. Appellant has not shown any good reason to disregard the law of the case.