OPINION.
{¶ 1} Appellant, Albert Totarella, appeals from a final judgment of the Geauga County Court of Common Pleas granting appellee, State Farm Fire and Casualty Company, summary judgment. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On December 6, 2001, Brian Keeney ("Brian") and his parents brought an action to recover damages from appellant for injuries suffered by Brian during an assault. While the case was pending, appellee, which previously had issued a homeowner's insurance policy to appellant, filed a separate complaint seeking a declaration that the company had no duty to defend appellant against the Keeneys' claims or to provide appellant with liability coverage for any subsequent verdict.
 {¶ 3} The trial court consolidated the cases, and appellee filed a motion for summary judgment arguing that the company had no duty to defend or indemnify appellant because his actions were intentional and, therefore, excluded under the policy. Appellee attached to its motion a copy of Brian's deposition in which he described what happened on the night of December 28, 1999. According to his testimony, Brian and a friend were walking past appellant's home at around 8:00 p.m. when he decided to knock on the front door "just for fun." Brian knocked on the door, jumped off of the front porch, and began running. As he did this, Brian heard appellant open the door and say "get back here you mother fuckers." Brian, however, continued to run until he stumbled and fell to the ground. When he regained his feet and looked back, Brian noticed appellant was now chasing him.
 {¶ 4} Brian testified that he stopped running when he reached the driveway of his friend's house. There, according to Brian, appellant grabbed him and threw him into a ditch. Appellant then pinned Brian's arms to the ground and punched him in the face approximately twenty times.
 {¶ 5} Appellant countered appellee's motion for summary judgment by submitting a brief in opposition that included his affidavit, in which he stated the following:
 {¶ 6} "2. I did not intend to injure Brian Keeney. I did not expect that Brian Keeney would be injured.
 {¶ 7} "3. When Brian Keeney pounded on my door, I believed he was an intruder who was responsible for break-ins and vandalism that had been occurring on my street. I feared for the safety of my family and I intended to restrain Brian Keeney until a police officer arrived at the scene.
 {¶ 8} "4. While I was trying to restrain Brian Keeney, we struggled and fell into the snow. I was only trying to restrain him to keep him from running away.
 {¶ 9} "5. I did not intend to strike or kick Brian Keeney or to cause him injury. Throughout the incident, I was only trying to restrain him until a police officer could determine his intentions."
 {¶ 10} After considering the parties' respective arguments, the trial court issued a decision granting appellee summary judgment, ultimately concluding that the company did not have a duty to defend or indemnify appellant with respect to any claims arising out of the Keeneys' complaint. From this decision, appellant filed a timely notice of appeal with this court. He now offers the following assignment of error for our consideration:
 {¶ 11} "The trial court erred to the prejudice of defendant-appellant, Albert Totarella, when it granted plaintiff-appellee's motion for summary judgment and declared that plaintiff-appellee had no duty to defend and indemnify defendant-appellant with respect to claims filed against him in Geauga C.P. No. 01P1121, consolidated with this case, or with respect to any other claims arising out of the same incident."
 {¶ 12} Appellant contends that the trial court erred in granting appellee summary judgment because there are genuine issues of material fact. In particular, appellant maintains that he presented evidence showing that he never intended to harm Brian on the night in question. Moreover, appellant claims that any injuries suffered by Brian resulted from appellant's attempt to protect himself and his family, and to restrain Brian until the police could arrive. Accordingly, appellant argues that he is entitled to coverage under his homeowner's policy with appellee.
 {¶ 13} Summary judgment is appropriate when the moving party establishes the following: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Leibreich v. A.J.Refrigeration, Inc., 67 Ohio St.3d 266, 268, 1993-Ohio-176.
 {¶ 14} If the moving party meets its initial burden under Civ.R. 56(C), then the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial.Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. However, if the nonmoving party fails to do so, the trial court may enter summary judgment against that party. Civ.R. 56(E).
 {¶ 15} "An insurance company has a duty to defend an action against its insured when the allegations of the complaint against the insured bring the action within the coverage of the insured's policy."Preferred Mut. Ins. Co. v. Thompson (1986), 23 Ohio St.3d 78, 80. However, an insurance company may pursue a declaratory judgment action to determine its rights and obligations under an issued policy. PreferredRisk Ins. Co. v. Gill (1987), 30 Ohio St.3d 108, paragraph one of the syllabus. If no set of facts alleged in a complaint would, if proven true, invoke coverage, the insurer is not required to provide a defense or indemnify the insured. Cincinnati Indemnity Co. v. Martin,85 Ohio St.3d 604, 605, 1999-Ohio-322.
 {¶ 16} In determining whether appellee has a duty to defend and/or indemnify appellant, we must first look to the language of the policy itself. The policy provides coverage for bodily injuries resulting from an "occurrence," which is defined as an accident that results in bodily injury or property damage. The homeowner's policy also excluded coverage for bodily injury that is either expected or intended by the insured, or that is the result of willful and malicious acts.
 {¶ 17} In Motorists Mut. Ins. Co. v. Trainor, (1973),33 Ohio St.2d 41, paragraph two of the syllabus, the Supreme Court of Ohio held that under a liability insurance policy, the scope of the allegations in the complaint against the insured determines whether an insurance company has a duty to defend. Accordingly, "where the complaint brings the action within the coverage of the policy the insurer is required to make defense, regardless of the ultimate outcome of the action or its liability to the insured." Id.
 {¶ 18} The Court later expanded Motorosts when it stated inWilloughby Hills v. Cincinnati Ins. Co. (1984), 9 Ohio St.3d 177, 179, that "the duty to defend need not arise solely from the allegations in the complaint but may arise at a point subsequent to the filing of the complaint." Therefore, "where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept the defense of the claim." Id. at 180.
 {¶ 19} However, in Gill, supra, at 113, the Supreme Court distinguished Willoughby Hills when it held that "where the conduct which prompted the underlying * * * suit is so indisputably outside coverage, we discern no basis for requiring the insurance company to defend or indemnify its insured simply because the underlying complaint alleges conduct within coverage." According to the Court, "[s]uch an approach would ignore patent realities for no overriding reason. To compel the insurer to defend regardless of the true facts, where, as here, the insurer has not promised to defend groundless, false or fraudulent claims, imposes an onerous burden for which the insurer did not bargain." Id. As a result, courts should "no longer unquestioningly elevate the allegations in the underlying tort complaint above all consideration of the true facts as established by the insurer unless the insurer has agreed to defend regardless of the true facts." Id. See, also, CincinnatiIns. Co. v. Anders, 99 Ohio St.3d 156, 2003-Ohio-3048, at ¶¶ 17-21.
 {¶ 20} The Keeneys' complaint alleges that appellant both "negligently" and "intentionally and maliciously assaulted and battered" Brian. It further claims that appellant's "assault and battery upon [Brian] was intentional, malicious, willful and wanton with the specific intent to cause serious physical harm to [him]."
 {¶ 21} As noted earlier, appellee's duty to defend would come into existence only when an accident caused damages that were unexpected or unintended by appellant. Our review of the Keeneys' complaint shows that their claims are couched in terms of a specific intent to do harm and that appellant's actions were "malicious, willful and wanton[.]" Brian testified that appellant threatened him, chased him, knocked him down, pinned him, and then repeatedly punched him in the face. If true, this would preclude any duty to defend on the part of appellee. Moreover, characterizing an insured's conduct as "negligent" does not create a question of fact with respect to the insured's intent as "the mere insinuation of negligence in a civil complaint cannot transform what are essentially intentional torts into something `accidental' that might be covered by insurance." State Auto. Ins. Cos. V. Manning (Aug. 29, 1997), 11th Dist. No. 96-G-2000, 1997 WL 531234, at 7.
 {¶ 22} Furthermore, even if the other evidence in the record is considered, the result is no different. Appellant claims that although he chased Brian off his property and eventually struggled with him, he never meant to hurt him. He also maintains that he only wanted to restrain Brian until the authorities arrived. However, appellant does not deny he continued to chase Brian well beyond the limits of his property, or that he repeatedly struck Brian during the altercation. Instead, he merely argues that he "did not intend to strike or kick [Brian.]" (Emphasis added.)
 {¶ 23} Although not expressly stated, it appears that appellant is claiming he was either acting in self-defense, or was affecting a citizen's arrest, or was ejecting a trespasser from his property. Stated differently, appellant essentially contends that he was entitled or privileged to use force under the surrounding circumstances, and that the justifiable use of force should not preclude coverage.
 {¶ 24} In doing so, he mistakenly relies upon the Supreme Court's decision in Thompson, supra. However, Thompson requires that the "surrounding circumstances" justify the use of force. Here, appellant's affidavit, and the unrebutted assertions in appellee's summary judgment submissions do not present "surrounding circumstances" that demonstrate any of the vaguely offered affirmative defenses; i.e., self-defense, ejectment of a trespasser, or citizen's arrest.
 {¶ 25} To establish self-defense, appellant had to allege facts demonstrating the following elements: (1) that he was not at fault in creating the situation giving rise to the affray; (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that he did not violate any duty to retreat or avoid the danger. State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus. Appellant claims that he feared for his and his family's safety because he believed that Brain was an intruder responsible for "break-ins and vandalism that had been occurring on [his] street." However, there is absolutely nothing in the record that could logically lead a person to conclude that the simple act of knocking on a front door at 8:00 p.m. constituted a sufficient threat of great bodily harm justifying the use of self-defense. And even if it did, appellant clearly violated his duty to retreat when he became the aggressor and chased Brian off his property and restrained him once the pursuit ended.
 {¶ 26} Appellant also failed to present any evidence to support an argument that his actions constituted a lawful ejectment of a trespasser. "It is well-settled that a property owner may eject a trespasser by the use of reasonable force after notice to the trespasser to depart and his failure to do so within a reasonable time." State v.Fonce (Dec. 2, 1994), 11th Dist. No. 94-T-5041, 1994 WL 780878, at 2. The record does not show that appellant asked Brian to leave his premises or that when asked he failed to do so. Instead, Brian testified that as soon as he knocked on the door he began running away in an effort to avoid detection. Furthermore, appellant's use of force in this case was not even applied for the purpose of ejecting Brian from appellant's property; rather, it was not until Brian arrived at his friend's property did appellant eventually grab him and allegedly attempt to restrain him.State v. Walton (Aug. 2, 1995), 9th Dist. No. 94CA005940, 1995 WL 464719, at 4 (holding that "[t]he privilege to use force to repel an intruder does not permit a defendant to leave the sanctuary of his home to go after an anticipated intruder.").
 {¶ 27} Finally, appellant did not allege facts establishing that he was entitled to make a citizen's arrest as such an action must be based upon either the commission of a felony or reasonable cause to believe a felony has been committed. Jackson v. Gossard (1989),48 Ohio App.3d 309, 311. Here, although Brain's conduct may have been juvenile, there is no evidence that he committed a felony while on appellant's property. More importantly, appellant has not shown he had a "reasonable belief" that a felony had been or was about to be committed.
 {¶ 28} As a result, even though an insured may be entitled to coverage after intentionally injuring a third party under appropriate circumstances, there is no question that the conduct which prompted the underlying lawsuit falls outside coverage.
 {¶ 29} Appellant's sole assignment of error has no merit. The judgment of the trial court is affirmed.
Judgment affirmed.
CYNTHIA WESTCOTT, RICE, J., concurs.
WILLIAM M. O'NEILL, J., dissents with dissenting opinion.