[Cite as *Ellis v. Skinner*, 2023-Ohio-2032.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

EDWARD ELLIS,

        Plaintiff-Appellant,

    - vs -

AMANDA SKINNER,

        Defendant,

ERIE INSURANCE COMPANY,

        Intervenor-Appellee.

**CASE NO. 2022-G-0043**

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2021 P 000019

## O P I N I O N

Decided: June 20, 2023
Judgment: Affirmed

*Vincent A. Stafford*, Stafford Law Co., LPA, 55 Erieview Plaza, 5th Floor, Cleveland, OH 44114 (For Plaintiff-Appellant).

*Emily R. Yoder*, Hanna Campbell & Powell, LLP, 3737 Embassy Parkway, Suite 100, Akron, OH 44333 (For Appellee-Intervenor).

MATT LYNCH, J.

{¶1}    Plaintiff-appellant, Edward Ellis, appeals from the judgment of the Geauga County Court of Common Pleas, granting summary judgment in favor of intervenor-appellee, Erie Insurance Company, and finding it had no duty to defend or indemnify Ellis. For the following reasons, we affirm the judgment of the lower court.

{¶2}    On January 8, 2021, Ellis filed a Complaint against defendant, Amanda Skinner. The Complaint alleged that, after Ellis terminated his relationship with Skinner,

she began demanding payment of money in excess of $30,000 or "he would be put through a 'public humiliation.'" It alleged that she posted embarrassing and private information online. The Complaint raised causes of action for Extortion, Defamation, Invasion of the Right of Privacy, Stalking, Misappropriation of Likeness, Cyber Harassment, and Invasion of Privacy.

{¶3} Skinner filed an Answer and Counterclaim on February 9, 2021. In her Counterclaim, she alleged that Ellis committed the acts of rape and gross sexual imposition in violation of R.C. 2907.02 and 2907.05 by having sex with her after she asked him to stop. Skinner raised claims for Damages for Criminal Acts pursuant to R.C. 2307.60 (Count I), Intentional Infliction of Emotional Distress (Count II), Assault/Battery (Count III), Negligence (Count IV), Negligence Per Se (Count V), and requested punitive damages.

{¶4} On March 9, 2021, Erie Insurance Company, which had issued several insurance policies to Ellis, moved to intervene. It observed that Ellis had claimed he was entitled to a defense and indemnity on Skinner's counterclaims and it was currently defending Ellis under a reservation of rights. The court granted the motion.

{¶5} Erie filed an Amended Complaint for Declaratory Judgment on July 6, 2021. It argued that "[c]overage for some or all of the claims and damages asserted against Ellis are not covered under one or more of the Erie policies and are otherwise barred by the conditions, limitations, and exclusions contained in the policy." It requested the court "interpret the policy and declare the rights of the parties thereunder." Attached to the Complaint were copies of three Erie policies held by Ellis: an ErieSecure Rental Insurance Policy, an ErieSecure Home Policy, and an Erie Personal Catastrophe Liability Policy.

2

**{¶6}** The Rental Policy, Liability Protection-Section II, in pertinent part, provided liability coverage for amounts "'anyone we protect' becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' during the policy period, arising out of the ownership, maintenance, occupancy or use of the 'residence premises.'" The Home Policy provided liability coverage for amounts "'anyone we protect' becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' during the policy period." The Catastrophe policy provides liability coverage for "the ultimate net loss which anyone we protect becomes legally obligated to pay as damages because of personal injury or property damage resulting from an occurrence during the policy period" and applies "to damages in excess of the underlying limit or Self-Insured Retention." Occurrence is defined in the policies as "an accident" which includes "continuous or repeated exposure to the same general harmful conditions."

**{¶7}** Ellis filed a counterclaim against Erie, arguing that under the insurance policies, Erie is contractually obligated to provide him with legal representation and pay damages for "bodily injury" caused to Skinner. He requested an order declaring Erie is obligated to defend and indemnify him.

**{¶8}** On June 7, 2022, Erie filed a Motion for Summary Judgment. It argued that there was no coverage for Skinner's claims against Ellis under any of the insurance policies. It contended that the alleged bodily injury did not occur at the residence premises for the purposes of the Rental Policy. It also argued that, under the Home Policy and Catastrophe Policy, the alleged acts were not an "occurrence" or accident and that intentional acts are excluded from coverage.

3

{¶9} Ellis filed a Brief in Opposition, in which he argued that there were allegations by Skinner that arose from negligent rather than intentional conduct and, thus, he was entitled to a defense relating to the alleged conduct in the sexual acts. In its Reply in Support, Erie countered that although certain claims were characterized as negligence, they were based on intentional conduct and regardless of how the claims were captioned, they were not covered.

{¶10} On October 4, 2022, the trial court issued a Judgment Entry granting summary judgment in favor of Erie and finding that it had no duty to defend or indemnify Ellis. The court concluded that "it is clear under the terms of the policies at issue, Erie has no duty to indemnify Ellis for" Counts I through III or punitive damages. It found, however, that the claims of negligence and negligence per se "assert a tort which, if proven, arguably would require Erie to indemnify Ellis." The court ultimately determined that there were no allegations of "any specific negligent conduct" and it "is not bound to deny Summary Judgment to Erie merely because Skinner's counterclaim has alternatively labeled Ellis's acts as negligent in Counts IV and V." It concluded that Ellis failed to meet his burden under Civ.R. 56 or create a genuine issue of material fact that his alleged conduct in continuing sexual intercourse with Skinner after she asked him to stop was negligent. The court found that since there were no factual allegations that could "arguably or potentially" fall under the coverage, there was no duty to defend Ellis.

{¶11} Ellis timely appeals and raises the following assignment of error:

{¶12} "The trial court erred as a matter of law and abused its discretion in awarding Erie Insurance Company summary judgment and issuing a declaration that it is not obligated to defend and/or indemnify Ellis against Skinner's Counterclaims."

4

{¶13} Summary judgment is appropriate when "there is no genuine issue as to any material fact and * * * the moving party is entitled to judgment as a matter of law," i.e., when "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Civ.R. 56(C). An appellate court reviews summary judgment de novo. *Fradette v. Gold*, 157 Ohio St.3d 13, 2019-Ohio-1959, 131 N.E.3d 12, ¶ 6. "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27. Further, "[u]nlike questions of fact, which must be construed in favor of the nonmoving party, a decision granting * * * summary judgment based on interpretation of an insurance contract is a question of law." *Doe v. Sherwin*, 11th Dist. Portage No. 2013-P-0058, 2015-Ohio-2451, ¶ 11.

{¶14} Ellis argues that the trial court erred in granting summary judgment in favor of Erie because it failed to provide evidentiary materials in support of its claims that it had no duty to defend or indemnify him. Ellis also argues that the claims raised are meritless and the record lacks evidence that he committed an intentional, rather than negligent, act, and he is entitled to a defense under his insurance policy.

{¶15} A party moving for summary judgment "bears the initial burden of *demonstrating* that there are no genuine issues of material fact concerning an essential element of the opponent's case. To accomplish this, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment." *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d

5

264 (1996). Such materials include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any." Civ.R. 56(C). "The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." *Dresher* at 293. If the moving party satisfies this burden, "the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.*

{¶16} Here, it is accurate that there were limited materials to support the motion for summary judgment. Erie cited Skinner's Answer and Counterclaim as well as the insurance policies it had attached to its Complaint. In matters relating to the duty to defend, there is often limited evidence presented in summary judgment proceedings and considered by the courts since the issue of entitlement to a defense relates to whether the terms of the written insurance policy cover the acts alleged in the complaint, as will be discussed further. *See Gillette v. St. Paul Guardian Ins. Co.*, 113 Ohio App.3d 564, 568, 681 N.E.2d 944 (11th Dist.1996) ("in support of its motion for summary judgment [on the issue of the duty to defend], appellee [insurance company] attached a copy of the insurance policy in question and a copy of the counterclaim"); *Orthopedic & Neurological Consultants, Inc. v. Cincinnati Ins. Co.*, 2018-Ohio-185, 104 N.E.3d 133, ¶ 10-13 (10th Dist.) (the court considered the complaint and insurance policy to determine whether the

6

grant of summary judgment was appropriate). A copy of an insurance policy that has a notarized signature and a certification that the policy language is a true and accurate representation of the policy, like the notarized letter included in the record in the present proceedings which certifies that the policies are "true likenesses" of those issued to Ellis, has been found to be proper evidence under Civ.R. 56. *Dunigan v. State Farm Mut. Auto. Ins. Co.*, 9th Dist. Lorain No. 03CA008283, 2003-Ohio-6454, ¶ 12-16. *See also McDonald Community Fed. Credit Union v. Presco*, 11th Dist. Trumbull No. 89-T-4241, 1990 WL 174146, *1-2 (Nov. 9, 1990) (a copy of a written instrument attached to a complaint is part of the complaint and record and can be considered at the summary judgment stage).

{¶17} Erie included references to those documents, properly considered under Civ.R. 56, relevant to determining the limited issue of whether the insurance policy covered the acts alleged in the counterclaims. As such, there were evidentiary materials supporting Erie's motion for summary judgment. Although Ellis argues that the lower court improperly shifted the burden to him since the moving party failed to meet its burden to provide evidentiary materials, we disagree that Erie failed to produce evidentiary materials required under Civ.R. 56.

{¶18} We must consider, however, whether these materials demonstrated that there was not an issue of fact as to whether the counterclaims fell under the terms of the policies held by Ellis. "An insurer has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy." *Sharonville v. Am. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 13. "However, an insurance company may pursue a declaratory judgment action to determine its rights and obligations under an issued

7

policy." *State Farm Fire and Cas. Co v. Totarella*, 11th Dist. Geauga No. 2002-G-2457, 2003-Ohio-5229, ¶ 15; *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St.3d 108, 507 N.E.2d 1118 (1987), paragraph one of the syllabus.

{¶19} "The scope of the allegations in the complaint against the insured determines whether an insurance company has a duty to defend the insured." *Ohio Govt. Risk Mgt. Plan v. Harrison,* 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 19. "The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage." *Id.*; *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 180, 459 N.E.2d 555 (1984) ("where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept the defense of the claim"). "However, an insurer need not defend any action or claims within the complaint when all the claims are clearly and indisputably outside the contracted coverage." *Ohio Govt. Risk Mgt.* at ¶ 19. "The insurer need not provide a defense if there is no set of facts alleged in the complaint which, if proven true, would invoke coverage." *Cincinnati Indemn. Co. v. Martin*, 85 Ohio St.3d 604, 605, 710 N.E.2d 677 (1999).

{¶20} There is no question that the Erie policies exclude intentional torts. The policies provide liability coverage for an "occurrence," which is defined by the policies as "an accident." The Ohio Supreme Court has observed that "'inherent in a policy's definition of "occurrence" is the concept of an incident of an accidental, *as opposed to an intentional, nature.*'" *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-

8

Case No. 2022-G-0043

3718, 913 N.E.2d 426, ¶ 21, citing *Gearing v. Nationwide Ins. Co.*, 76 Ohio St.3d 34, 38, 665 N.E.2d 1115 (1996). An accident "is an event proceeding from an unexpected happening or unknown cause without design and not in the usual course of things [or] an event that takes place without one's expectation * * *." (Citation omitted.) *Westfield Cos. v. Gibbs*, 11th Dist. Lake No. 2004-L-058, 2005-Ohio-4210, ¶ 17. Counts I through III of Skinner's counterclaim unquestionably allege intentional torts and conduct. They assert that Ellis committed the crimes of kidnapping and gross sexual imposition, intentionally inflicted emotional distress, and intended to cause harmful contact, all stemming from the allegations that Ellis held Skinner down and continued to have sex with her after she asked him to stop. They are unrelated to accidental conduct.

{¶21} Nonetheless, we must consider whether the remaining counterclaims are potentially or arguably within the insurance coverages for "occurrences." "When an insurer has a duty to defend one claim asserted against an insured in a lawsuit, it must defend the entire lawsuit, even though other claims may not come within the coverage of the policy." (Citation omitted.) *OSI Sealants, Inc. v. Wausau Underwriters Ins. Co.*, 11th Dist. Lake No. 2003-L-181, 2005-Ohio-2528, ¶ 20.

{¶22} Counts IV and V raise claims for "negligence" and "negligence per se." In the claim for negligence, Skinner restated her allegations that Ellis continued to forcefully engage in sexual conduct and have sexual contact with her despite her requests that he stop and alleged he owed a duty of care to "stop when so requested" and breached that duty. In the negligence per se claim, she again restated the allegations of his conduct, alleged that his "actions were of a prohibitive conduct and as such negligence per se" and that he "violated the specific acts as required by law."

9

Case No. 2022-G-0043

{¶23} While these claims were for negligence and negligence per se, they did not relate to actions or conduct that were mere negligence. They restated the claims contained throughout the complaint that Ellis took actions to sexually assault her despite her requests that he stop. They do not assert that the acts were "accidental" rather than intentional. This court has held that "[a]lthough [a] complaint does state a cause of action sounding in negligence, this is not sufficient to preclude summary judgment in favor of the insurer in a declaratory judgment action" where the conduct alleged is an intentional tort. *Bailey v. Bevilacqua,* 158 Ohio App.3d 382, 2004-Ohio-4392, 815 N.E.2d 1136, ¶ 29 (11th Dist.). "[T]he mere insinuation of negligence in a civil complaint cannot transform what are essentially intentional torts into something 'accidental' that might be covered by insurance." *State Auto Ins. Cos. v. Manning*, 11th Dist. Geauga No. 96-G-2000, 1997 WL 531234, *7 (Aug. 29, 1997); *Totarella*, 2003-Ohio-5229, at ¶ 21 (merely characterizing the insured's conduct as negligent does not create a question of fact where the conduct alleged is intentional).

{¶24} It has been determined that claims labeled negligence are not covered by insurance policies under similar circumstances. In *Totarella*, this court found that when the complaint "shows [the claims at issue] are couched in terms of a specific intent to do harm," the fact that the complaint also referenced negligent conduct "does not create a question of fact with respect to the insured's intent." 2003-Ohio-5229, at ¶ 21. It observed that allegations that the insured "negligently" and "intentionally" assaulted the victim with intent to cause serious physical harm did not raise a claim of negligence given that a claim for assault is based on an intentional act. *Id.*

10

**{¶25}** Similarly, in *Allstate Vehicle and Property Ins. Co. v. Inabnitt*, 12th Dist. Warren Nos. CA2021-10-094 and CA2021-10-098, 2022-Ohio-2098, a complaint was filed against defendant policyholder alleging that he caused injuries when he assaulted a construction worker at his home and contended that the policyholder's actions were "intentional, unconsented, and caused physical conduct." *Id.* at ¶ 44. The court held that despite the "characterization of [these] acts as 'negligent' in [the] fifth cause of action, which would typically be covered by the Policy, the crux of [the] claim concerns the conduct" that led to a conviction for felonious assault. *Id.* at ¶ 45. Since the policy did not cover "intentional or criminal acts," characterization of the claim as negligence did not bring it under the scope of the policy. *Id.* at ¶ 46.

**{¶26}** In the present matter, similar circumstances apply. The counterclaim does raise claims of negligence and negligence per se. However, these claims do not arise from negligent conduct. While they state the elements of such claims, they are solely based on alleged *conduct* that is intentional rather than accidental or negligent. Ellis did not raise issues to the contrary. He did not, for example, argue that through an act of negligence or accident he had sexual intercourse with Skinner, contrary to her wishes. He denies any wrongful acts relating to the alleged conduct and his answer alleges that the two engaged in consensual sexual conduct. The issue at this stage is not whether Ellis actually committed the acts alleged in the complaint but whether the alleged acts can fall under the terms of his policies. *See Ward v. United Foundries, Inc.*, 5th Dist. Stark No. 2009 CA 00019, 2010-Ohio-6694, ¶ 83 (rejecting the argument that an insured is entitled to a defense since the claim against him "has yet to be 'determined to have been committed'"). Denial of the acts does not preclude application of the test outlined above

11

to determine whether the scope of the allegations is arguably covered under the terms of the policy. The complaint alleges facts and arguments that relate specifically to intentional, wrongful acts as discussed above and thus cannot fall under the insurance policies.

{¶27} Ellis argues that there is a lack of evidence that he "expected or intended to cause any injury to Skinner." However, there is little question that, in the case of sexual assault allegations, there will be an injury. It has been held that intent to cause an injury or damage may be inferred when the "harm is intrinsically tied to the act of the insured" such as certain cases of "sexual molestation" or rape. *Allstate Ins. Co v. Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312, 942 N.E.2d 1090, ¶ 48. *See also Gearing*, 76 Ohio St.3d at 40, 665 N.E.2d 1115 ("[i]ncidents of intentional acts of sexual molestation of a minor do not constitute 'occurrences' for purposes of determining liability insurance coverage, as intent to harm inconsistent with an insurable incident is properly inferred as a matter of law from deliberate acts of sexual molestation of a minor"). The act of holding down a victim and having sex with her against her will creates a harm tied to the act of the insured.

{¶28} As has been observed, "[g]iven that an insurer's duty to defend is broader than its duty to indemnify, the absence of a duty to defend necessarily means there is no duty to indemnify." *OTARMA v. Miami Twp.*, 2023-Ohio-733, __ N.E.3d __, ¶ 9 (2d Dist.). *See also Gill*, 30 Ohio St.3d at 115, 507 N.E.2d 1118 (where appellee had no duty to defend an intentional act outside of policy coverage, "it follows that appellee has no obligation to indemnify"); *Ward* at ¶ 83 (finding no duty to defend or indemnify when the claim in the complaint is not potentially or arguably covered under the terms of the policy).

12

Case No. 2022-G-0043

Based on the foregoing, we find that Erie had no duty to defend or indemnify Ellis on the counterclaims raised by Skinner.

{¶29} The sole assignment of error is without merit.

{¶30} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas, granting summary judgment in favor of Erie, is affirmed. Costs to be taxed against appellant.


JOHN J. EKLUND, P.J.,

MARY JANE TRAPP, J.,

concur.

Case No. 2022-G-0043